CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 12 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TOMMY VANDYKE, | ) | CASE NO. 7:12CV00182 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | |
| | ) | |
| S.W.V.R.J., ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Tommy Vandyke, an inmate at the Southwestern Virginia Regional Jail (SWVRJ), filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging that SWVRJ officials are violating his constitutional rights by denying his request to attend group church services with other Christian inmates. The court advised Vandyke that to proceed, he would need to amend to particularize his allegations and name proper defendants. Vandyke has now submitted an amended complaint and numerous motions. Upon review of the record, the court concludes that Vandyke's complaint as amended must be summarily dismissed under 28 U.S.C. § 1915A(b)(1), and that his pending motions must be denied.

I

Vandyke offers the following allegations in support of his claims. When Vandyke was first detained at the SWVRJ on December 22, 2011, he asked to be placed in protective custody. Vandyke had worked with the Washington County Sheriff's Office on several drug and theft cases against other individuals, and people involved in these cases had made threats against Vandyke and his family. Jail officials granted his request and assigned him to "block 9-A," an area of the jail reserved for protective custody inmates. Vandyke then asked to be allowed to attend Christian worship services with other inmates. Officers advised him that inmates on

block 9-A are not allowed to move around the jail to attend classes or other functions, including group church services. In January 2012, Vandyke filed an "inmate request/complaint form," complaining that as a protective custody inmate in segregation, he could not attend church services. He received a written response, stating that 9A inmates are not allowed to move around the jail and suggesting that he would have more freedom if he sought transfer to another area of the jail.

Vandyke cites Hebrews 10:25 ("Do not forsake the assembly of ourselves together") as evidence that the Bible and God's "commandment" require Christians to attend church services. Vandyke alleges that the inability to attend church services "has a dramatic effect on [his] spiritual walk, leaving [his] spirit weaker [and putting him] in direct disobedience to" the requirements of his religion. Vandyke also claims that denying him the right to attend group services, while allowing other inmates to do so, violates his First Amendment rights and discriminates against him.

In his amended complaint, Vandyke names as defendants the SWVRJ and the officers who denied his grievances about attending group services (Captain Lockhart, Lt. Patrick, and Lt. Kilgore). Vandyke has also moved to amend to bring an additional claim that jail officers Carter and Hall, during a search of his cell, took religious items out of his Bible and threw them away (ECF No. 8). Vandyke is seeking $500,000 in damages and a transfer to a Virginia Department of Corrections (VDOC) prison facility where he can attend church services. Vandyke has also filed motions seeking immediate transfer to a VDOC prison facility (ECF Nos. 10 & 18), motions for judgments (ECF Nos. 9 & 17), a motion for appointment of counsel (ECF No. 19), and a motion for court assistance regarding access to free writing materials and photocopy services at the jail (ECF No. 16).

2

II

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Prisoners retain constitutional rights behind prison walls, but the exercise of those rights is necessarily limited in a manner which is consistent with their status as prisoners and the legitimate state interests in operating secure, efficient prisons. Turner v. Safley, 482 U.S. 78, 89-91 (1987). Federal courts must defer to the expertise of state prison officials in determining appropriate policies to deal with the difficult issues that arise in prison administration, unless such policies are not reasonably related to furthering justifiable penological goals. Id. at 85.

A. Free Exercise of Religion

The First Amendment provides in relevant part that the government shall not prohibit the free exercise of religion. U.S. Const. amend. I. A prison policy that may substantially burden an inmate's ability to practice his religious beliefs nevertheless withstands a First Amendment challenge when that policy is rationally related to furtherance of a legitimate governmental or penal interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987).

The Supreme Court has identified four factors to be considered in determining the reasonableness of a prison regulation that impacts an inmate's exercise of constitutional rights: (1) whether a "valid, rational connection" exists between the regulation and a legitimate and neutral governmental interest; (b) whether alternative means of exercising the asserted constitutional right remain open to plaintiff; (c) whether accommodating the asserted right will have an adverse impact on staff, inmates, and prison resources; and (d) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns." Turner, 482 U.S. at 89-92. The prisoner has the burden to disprove the validity of a prison regulation pursuant to the Turner analysis. Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

Vandyke's allegations are insufficient to support the necessary elements of religious rights claim under Turner. The jail's policy of restricting Vandyke, as a protective custody inmate, from participating in group activities with other inmates is reasonably related to the jail's legitimate interest in maintaining the protection Vandyke himself requested. Vandyke's submissions also indicate that he can practice his Christian beliefs in other ways, such as reading his Bible and talking to a chaplain. Making special arrangements for Vandyke to safely attend group meetings of any kind would adversely impact prison resources by diverting staff from other duties to escort and protect Vandyke while outside the protective custody area. Given Vandyke's description of his enemy situation in the jail, the restriction against his participation in group settings is not an exaggerated response. Therefore, the court must summarily dismiss without prejudice Vandyke's First Amendment claim regarding church services, pursuant to § 1915A(B)(1), for failure to state a claim.

The court will grant Vandyke's amendment regarding the religious materials allegedly taken from his Bible, and summarily dismiss the claim under § 1915A(b)(1). Vandyke fails to state any facts suggesting that the loss of these small items placed any burden whatsoever on his overall practice of his beliefs. Moreover, his allegations do not suggest that officers took these materials with any intention of preventing his exercise of his religious beliefs.[1] See Lovelace v. Lee, 472 F.3d 174, 194 (4th Cir. 2006) (finding that inadvertent or negligent interference with an inmate's religious practice does not rise to constitutional proportions).

B. Equal Protection

To prove a claim under the Fourteenth Amendment that he has been denied equal treatment, an inmate must first show that "he has been treated differently from others with whom he is similarly situated. . . ." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002). Prisoner litigants must also demonstrate that any such unequal treatment is not rationally related to a legitimate governmental purpose. Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989).

Vandyke's complaint fails to aver sufficient facts to state an equal protection claim. The request for protective custody precludes Vandyke from claiming that he is similarly situated to other inmates in the jail's general population who are allowed to attend group worship services. Veney, 293 F.3d at 730. Moreover, the jail's "no group activities" policy for protective custody inmates furthers the goal of protecting such inmates. Moss, 886 F.2d at 690. The court must

---

[1] To the extent that Vandyke is complaining of the loss of these items as personal property, such claims are not actionable under § 1983. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) ("an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available"). Because Vandyke has available tort remedies under state law, see Virginia Code § 8.01-195.3, he has no constitutional claim regarding the alleged loss of his personal property.

5

summarily dismiss without prejudice Vandyke's equal protection claim regarding church services, pursuant to § 1915A(B)(1), for failure to state a claim.

C. Transfer to VDOC Facility

Vandyke presents the following allegations in support of his demand for transfer. The state court has sentenced Vandyke to a term of imprisonment in the VDOC, and he has no pending charges or scheduled court hearings. Nevertheless, he remains confined at SWVRJ instead of being transferred to a VDOC facility. To protect himself in light of his past work as an informant, Vandyke feels he must stay in "protective custody" at the jail, and this status limits his ability to practice his religious beliefs. Vandyke also alleges that officers have retaliated against him in unspecified ways because of this lawsuit. Based on these facts, Vandyke asserts that he is entitled to a court order directing jail officials to transfer him immediately to the VDOC.

Vandyke is mistaken. Inmates have no protected liberty interest in being confined in any particular type of prison, even when conditions in one prison are more restrictive or harsh than conditions in other prisons. Meachum v. Fano, 427 U.S. 215, 224 (1976); Olim v. Wakinekona, 461 U.S. 238, 247-48 (1983). Thus, the mere fact that Vandyke remains confined in a jail setting, despite his VDOC sentence, does not deprive him of any constitutionally protected right. Moreover, different treatment of VDOC inmates housed in local jails and VDOC prisons also fails to state any actionable constitutional claim. See also Strickler v. Waters, 989 F.2d 1375 (4th Cir. 1993) (finding no equal protection claim where inmates in different jail facilities complained of different conditions, because such inmates are not similarly situated and prisoner housing assignments are reasonably related to state interests in prison administration). Vandyke fails to state facts indicating that officials' failure to transfer him to the VDOC is not reasonably

6

related to legitimate state concerns regarding the most efficient use of bed space or other matters of routine prison administration, and so long as Vandyke remains at the jail for such reasons, he is not similarly situated to inmates housed in VDOC institutions. For lack of cause shown, Vandyke's claim that he has a right to be transferred immediately to a VDOC facility must be summarily dismissed under § 1915A(b)(1), and his motions for interlocutory injunctive relief on this issue (ECF Nos. 10 & 18) must be denied.

D. Other Pending Motions

Vandyke asserts that he is entitled to court-appointed counsel to assist him in bringing this civil action (ECF No. 19). In support of this motion, Vandyke states that he has no knowledge of laws or codes, is indigent, and has mental health and emotional problems. Only under exceptional circumstances does the court request an attorney to represent an indigent, civil plaintiff who has a colorable claim, but lacks the capacity to present it. Gordon v. Leeke, 574 F.2d 1147, 1173 (4th Cir. 1978); Cook v. Bounds, 518 F.2d 779 (4th Cir. 1975). The circumstances plaintiff presents are common to many inmate litigants. Moreover, because the court herein finds that Vandyke's claims are without merit, the court also finds that appointment of counsel is not warranted here.

Vandyke also demands that the court order jail officials to change their policies regarding photocopying procedures and the type and amount of free writing materials provided to indigent inmates. As Vandyke fails to state any facts indicating that the jail's current policies violate his constitutional rights in any way, the court finds no ground upon which he is entitled to court intervention in these matters. The motion regarding assistance with these jail policies (ECF No. 16) will be denied. Finally, because the court finds that Vandyke's complaint states no actionable claims, his motions for judgment (ECF Nos. 9 & 17) must be denied.

7

III

In conclusion, the court summarily dismisses Vandyke's complaint as amended, pursuant to § 1915A(b)(1), for failure to state a claim, and denies all pending motions for the reasons stated. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 12th day of June, 2012.

*/s/ Glen Conrad*
Chief United States District Judge